Polis v. Tice.

WILLIAM POLIS, appellant,

v.

ELMER F. TICE, respondent.

1. Fairness requires that on the hearing of an appeal from a decree of the orphans' court, confirming the report of a master on a final account, the appellant should be confined to the objections made by him below.

2. A trustee held to have forfeited all claim to commissions, by negligence, &c., in the management of the trust.

On appeal from decree of Camden orphans' court, confirming report of master upon the final account of the guardian of a lunatic.

*Mr. P. S. Scovel,* for the appellant.

*Mr. B. D. Shreve,* for the respondent.

THE ORDINARY.

In February, 1867, the respondent became insane. In February, 1868, the appellant was duly appointed his guardian. He accepted the appointment, and gave bond and entered upon his duties accordingly. In November, 1870, the respondent was found to have been restored to his reason and to be of sound mind, and the appellant was ordered to pay or deliver over to him his property. The appellant did not, however, file his account until July, 1873. Exceptions were filed to it and it was referred to a master, who reported in January, 1875, surcharging the account in various particulars, and refusing to allow the amount of a promissory note for $1,000, given to the respondent, before his insanity, by Philander Horner, Thomas McDowell, Henry Van Brunt and Joel Horner (the last named being surety for the others), and on which the appellant had, after he became guardian,

collected interest, as he swears, at the rate of ten per cent. per annum. The master denied the appellant commissions, on the ground that he had forfeited all claim to the allowance thereof by permitting waste of the estate, and by negligence in the discharge of his duties.

To the report of the master exceptions were filed, and, on the hearing of the matter, the court, by their decree, confirmed the report. The guardian appealed from the decree, and he now seeks to reverse it in all the respects in which the report was adverse to him. Fairness requires that in such a case as this, the appellant be confined on the hearing of the appeal, to the objections made below. The exceptions made to the master's report were only to the refusal to allow the note of $1,000 and the commissions. There appears, however, to be no ground for the other objections. The conduct of the appellant in managing the estate, has not been such as to entitle him to the favorable consideration of the court. It is abundantly evident that he has been remiss in his duty. He appears to have permitted great waste of his ward's "truck farm," thereby causing damage to the amount, as the respondent swears, of about $1,200, or, as another witness testifies, of from $600 to $700. He appears also to have been negligent in his management of the estate in other respects. He did not file his accounts until two years and a half after the order requiring him to restore to the respondent his property, had been filed in the orphans' court. He seems to have been disposed to give the respondent as much trouble as he could in obtaining his property. One of the witnesses says he told him, when speaking on this subject, that he had given the respondent a good deal of trouble and would give him more. He is not entitled to commissions.

The note for $1,000 was, as before stated, taken by the respondent himself, before he became insane. After he was restored to reason, he went to his counsel (who was then negotiating with the counsel of the appellant for a settlement of the account between the parties) to get the note,

in order to collect from Philander Horner, one of the makers, the interest due thereon. He then learned that the note was lost, but was informed that he might collect the money due on it, notwithstanding the loss of the instrument. He applied accordingly to Philander Horner, and requested him to pay the interest. Horner refused to do so, but it does not appear that his refusal was based on the non-production of the note. The respondent was, he says, anxious to obtain possession of the note, in order that he might bring suit, in Philadelphia, against Philander Horner, who was then, he alleges, the owner of property from which he might, by legal proceedings, have compelled payment. It does not appear that he was, by his inability to produce the note, prevented from taking such proceedings, nor even that he did not take them because of the alleged loss of the note. Suit was brought on the note by the appellant's counsel, at the request of the respondent's counsel, in the circuit court of Camden county, in the name of the respondent, against Joel Horner and Thomas McDowell. It was agreed that the respondent's counsel should take charge of the suit. The defendants put in a plea. The cause was prepared for trial by the appellant's counsel and was noticed for trial, and the respondent's counsel was notified of the fact. That suit has never been tried, and it is still pending. It is admitted that one of the defendants therein, Joel Horner, who was the surety on the note, is pecuniarily responsible, and it is not denied that if judgment were obtained against him in the suit he could be compelled to pay it. There is no proof that the other persons who are liable on the note became insolvent during the time that the appellant was guardian. On the other hand, the respondent testifies that when he applied to his counsel for the note, he offered to accept it on discharge of the appellant's liability to him as guardian, to the amount thereof.

The only evidence on the subject of the insolvency of the parties who were liable on the note, is the remark of the appellant to Henry C. Foreman, that "Joel Horner would

be a fool to pay the note, and that none of the other parties to the note were good for anything." But whether these other parties became insolvent after the appellant became guardian does not, as before stated, appear. To justify the court in charging the appellant with the note, it should appear, seeing that it was an investment made by the respondent himself, that by reason of the appellant's negligence in reference to it, the respondent has been injured or prejudiced; that the parties liable upon it, or some of them at least, have become insolvent while the appellant was chargeable with the investment as a trust, or that the loss of the note itself occasioned the loss of the money. But none of these things appear. Nor does it appear what the defence was which was set up by the plea. On the hearing it was said to be usury. It does not appear when the contract was made, nor whether the note was in fact liable to a defence, nor that the respondent was or would have been prejudiced in an effort to collect the amount of the note by any negligence of the appellant.

There is no ground on which the action of the court below in charging the note to the appellant can be sustained. The decree will therefore be reversed on this point, but affirmed in all other respects. No costs will be awarded to either party.